92  305
84a 450

F. RYHINER *et al.*

*v.*

WILLIAM FEICKERT.

1. NEGOTIABLE INSTRUMENTS—*how transferred when made to joint payees.* If a note be made payable to several persons, not partners, it can only be transferred by a joint indorsement of all of them; but when it is made to two or more persons as partners, it may be transferred by the indorsement of any one of them.

2. PARTNERSHIP—*what not evidence of.* The mere fact that an abbreviated form, as "Chas. & Wm. Feickert," instead of "Charles Feickert and William

Feickert," is used in describing the payees of a note, does not, as a matter of law, authorize the public to assume they are partners.

3. SAME—*possession of .note by one joint payee not evidence of.* The possession of a note by one of two joint payees is not evidence that the payees are partners, but is simply *prima facie* evidence of the title disclosed upon the face of the note.

4. JOINT PAYEES—*power to dispose of note.* Neither one of two joint payees being the agent of the other, he can no more bind the other by a sale of the note without indorsement than he can by a sale with indorsement.

5. SAME—*authority to collect does not confer authority to sell.* The fact that one joint payee is authorized by the other to collect the note when due, does not authorize him to sell or compound it.

APPEAL from the Appellate Court of the Fourth District; the Hon. TAZEWELL B. TANNER, presiding Justice, and the Hon. DAVID J. BAKER and Hon. JAMES C. ALLEN, Justices.

The facts in this case, as found in the Appellate Court, are: On the first of February, 1874, John B. Koehler made his eight promissory notes, bearing that date, and payable to "Chas. & Wm. Feickert," in one, two, three, four, five, six, seven and eight years, for unequal amounts, but aggregating $2,900, all bearing interest at the rate of ten per cent per annum. These notes were secured by a deed of trust on certain real estate, (the description whereof is not important,) to Charles Bosshard, trustee,—and it is recited therein that it is to secure to Charles Feickert and William Feickert payment of their said promissory notes.

On the — day of February, 1876, Charles Feickert, representing that he and William Feickert were partners, sold said notes to appellants, F. Ryhiner and others, for full value, and indorsed and assigned the same in the following words:

"We assign the within note over to Messrs. F. Ryhiner & Co., without recourse on us.      CHAS. & WM. FEICKERT."

Charles Feickert also further represented, at the time of selling and indorsing said notes, that he and William Feickert were partners under the name of "Chas. & Wm. Feickert," and that, independently of the partnership, he had full

authority to assign and sell the notes and receive the money therefor. And at the time appellants purchased the notes they had no notice of any title to the same in appellee outside of what appears upon the face of the notes. Since appellants purchased the notes they have collected from the maker thereof the sum of $180.

The notes were given for the purchase money of a farm owned by Charles Feickert and William Feickert, and were left in possession of Charles Feickert for convenience to the maker in making payment. Charles and William Feickert were never in partnership. Appellee never transferred the notes or deed of trust to the appellants, nor authorized Charles Feickert to do so,—and had no notice of the assignment until in May, 1876. He always protested against the validity of the assignment, and insisted on his right to one-half of the notes. Charles Feickert tended the farm, collected the rents, and attended to the business pertaining to it, until they sold the farm. They carried on the farm together for about four years. Charles Feickert had authority to collect the notes when due, and they were left with him for that purpose.

After the first note became due appellee wrote to Charles Feickert about it, and he replied that the note was not yet paid. Charles Feickert went into bankruptcy in November, 1876, and is worth nothing.

The indorsements on the notes are all in the handwriting of Charles Feickert.

Suit was brought by appellee, before a justice of the peace of Madison county, to recover one-half of the $180 paid to appellants on the notes.

The cause was taken by appeal to the circuit court of Madison county, were judgment was rendered in appellee's favor for $90 and costs of suit. From that judgment an appeal was prosecuted to the Appellate Court of the Fourth District, where the judgment of the circuit court was affirmed. To reverse that judgment the present appeal is prosecuted.

The errors assigned are, the Appellate Court erred in affirming and in not reversing the judgment of the circuit court.

Mr. G. B. BURNETT, for the appellants:

The notes were payable to "Chas. & Wm. Feickert." Being thus *prima facie* payable to a firm, Charles Feickert, having them in his possession and claiming to be a member of the firm, could transfer the title to appellants, they having no notice of the non-existence of the partnership.

The power of one partner to assign a promissory note payable to a firm of which he is a member will not be disputed. 1 Daniel on Negotiable Instruments, 506.

A party in possession of a note payable to a firm is presumed to be one of the firm, and *prima facie* has the right to indorse it in the firm name. *Blodgett* v. *Jackson,* 40 N. H. 21.

One of two promisees of a promissory note having possession may receive payment or indorse it. *Bruce* v. *Bonney,* 12 Gray, 107.

The proof shows that Charles and William Feickert were not, in fact, partners; but I insist that so far as this transaction is concerned, appellee, by his conduct, induced appellants to believe they were partners, and to deal with Charles Feickert under the belief that they were a firm.

When one, by words or acts, causes another to believe that the party with whom he deals has authority to do a particular thing, he becomes responsible for and bound by the acts of the party claiming to have such authority, and he can not afterwards be heard to say that the party had no authority to do the precise thing or one which did not reach so far, and that it was a mistake on the part of the third party. 1 Parsons on Contracts, 39; *Cowler* v. *Bacon,* 21 Conn. 451; *Ridgley* v. *Morrison,* 28 Ind. 201; *Heath* v. *Bank,* 44 N. H. 174; *Vibbard* v. *Rodrick,* 51 Barb. 616; Story on Agency, § 93.

In mercantile negotiations, the possession of the contract by the confidence of the party interested is a sufficient token

of authority in the party entrusted with it. *Errick* v. *Johnson,* 6 Mass. 196.

The transfer of a negotiable note without indorsement is a sale or assignment of the debt due to the payee, which he has as much right to sell as he has to dispose of any other species of property. 1 Daniel on Negotiable Instruments, 560.

The most that can be claimed by appellee is, that he was a joint owner with his brother of the notes in question, and that his brother was his agent to collect and receive his share of the proceeds, and that the notes were left with him for that purpose. Now, the law is well settled, that if an agent is entrusted with the disposal of negotiable instruments and he disposes of them by sale or pledge, or otherwise, contrary to the orders of his principal, to a *bona fide* holder without notice, the principal can not reclaim them. Story on Agency, § 228.

Messrs. METCALF & BRADSHAW, for the appellee:

The plaintiff in the court below was the private owner of one-half the notes, and never transferred or authorized Charles Feickert to assign them. Plaintiff's interest could only be divested by his indorsement thereon. 1 Scam. 53.

On a bill or note payable to several persons (not in partnership) the right to transfer it is in all collectively, not in any individually. *Carrick* v. *Vickery,* 2 Douglass, 563; Story on Bills, sec. 197; *Sager* v. *Frick,* 7 Watts and Serg. 383; Story on Prom. Notes, sec. 125. And even in case of partnership the right to transfer does not exist after dissolution, unless by death where the whole goes to the survivors. Story on Prom. Notes, p. 141.

Appellant admits, and the proof shows, that Charles and William Feickert never were partners in fact. And the question is, then, whether William's interest in these notes can, without his consent or authority, be transferred by Charles. Of course, also, it would be admitted that it could not be done, unless it is shown by the notes and deed of trust that they were partners, or that a prudent business man would so con-

clude from the way they are drawn, or that there are facts sufficient in this case from which to infer that Charles had a right as the agent of William to transfer the notes.

These notes were payable to " Chas. & Wm. Feickert." This is not the usual form of designating a firm. There was enough on the face of the notes to put third persons upon inquiry as to the character of ownership in the payees.

Whatever puts a party upon inquiry amounts in judgment of law to notice, provided the inquiry becomes a duty, as in case of purchasers and creditors, and would lead to a knowledge of the facts by the exercise of ordinary diligence and understanding. *Harper* v. *Ely,* 56 Ill. 179; *Henneberry* v. *Morse,* id. 394; *Babcock* v. *Lisk,* 57 id. 327; *Flint* v. *Lewis,* 61 id. 299; *Russell* v. *Hadduck,* 3 Gilm. 233; *Sturges' Sons* v. *Metropolitan Bank, etc.,* 49 Ill. 221. In these last two cases the court states the rule to be as above stated in cases of commercial paper.

Mr. FRITZ E. SCHEEL, also for the appellee:

An examination of the case of *Bruce* v. *Bonney,* 12 Gray, 107, cited by counsel for appellants, will show that it does not sustain his view of the law. In that case *both payees* had transferred the note for value previously to one Micklefield, and possession of the note had been given to Micklefield by and with the consent of both payees. Subsequently, at the request of Micklefield, Merrit, one of the payees, for himself and Asby, indorsed the paper to Micklefield to make a legal title to that which had been before equitably transferred, and the court held, that under such circumstances the indorsement of one of the payees for both, with the previous actual delivery of the note, made a valid title to the indorsee.

In the case at bar only one of the payees made the indorsement, using the names of both, but without authority to do so.

But even if Charles could be regarded the agent of William, he exceeded the authority claimed for him, and appellants will not be protected. Story on Agency, §§ 62, 71.

It is insisted that Charles Feickert, being in possession of the notes, was *prima facie* the owner. This court has repeatedly held that a maker makes payment at his peril, and is, when paying to a third person on account of another, bound to know that the person to whom he pays has authority to receive. *Holmes* v. *Field,* 12 Ill. 424; *Dutcher* v. *Beckwith,* 45 id. 460.

It is held in these cases that if a person innocently and in good faith pays to a person not having authority to receive, though he seemingly had it, it is no justification, and he can not resist paying it again.

So, in an action by an indorsee of a note against the maker, it is competent for the latter to prove, and it would constitute a good defence to show, that plaintiff held the note for collection only and as agent of the payee. *Baker* v. *Prentiss,* 6 Mass. 480.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

That a partner may, in general, indorse and transfer a promissory note made payable to his firm, is not questioned. It is also unquestioned law, that if a note be made payable or indorsed to several persons not partners, the transfer can only be by a joint indorsement of all of them. Story on Prom. Notes, § 125; Chitty on Bills and Notes, (8 Am. Ed.) 52; 2 Parsons on Bills and Notes, 4–5; 1 Daniel on Negotiable Instruments, § 684. Says the author last referred to: "If several persons not partners are payees or indorsees of a bill or note, it must be indorsed by all of them. Either one of the joint payees may authorize the other to indorse for him, and an assignment of this interest in the paper from one to the other carries with it such authority. But there is no presumption of law that one may indorse for the other." *Ubi supra.*

The question whether there was, in fact, a partnership between appellee and his co-payee, Charles Feickert, is conclu-

sively settled in the negative by the finding of the Appellate Court. (Laws 1877, p. 153, § 89.)

The contention of the appellants, however, is that appellee, by his conduct, induced appellants to believe that appellee and Charles Feickert were partners, and to deal with Charles Feickert under the belief that they were a firm.

The facts upon which this is predicated are: 1st. The names of the payees of the notes are abbreviated and written as "Chas. & Wm. Feickert," instead of in full, "Charles Feickert and William Feickert;" and 2d, Charles Feickert had possession of the notes.

We can not say, as matter of law, that the mere use of the abbreviated form, instead of writing the name of each of the payees in full, authorized the public to assume they were partners. A firm name might, certainly, be thus expressed. But the abbreviation does not necessarily convey the idea that the names are those of a firm. There are no words expressive of the idea of partnership, company, or association superadded. Such abbreviations as this are frequent in conversation and in writing to avoid the unnecessary repetition of the surname, and may, obviously, be used with quite as much propriety where the design is to express a joint interest merely, as where the design is to express a partnership.

The possession of the note by Charles Feickert, under the circumstances, is of no significance. In all cases where notes are payable to joint payees, instead of partners, the actual manual possession of the notes must be in some one of the payees. It is impossible that it can be in all at the same time. The faces of these notes disclose the interest of the holder—that he is joint payee, and that therefore he holds for himself and for all the other payees—and rebut any presumption that might arise otherwise from the mere possession of the notes.

Where notes are payable to "bearer," or to "order," possession is *prima facie* evidence of legal ownership. 2 Parsons on Notes and Bills, p. 42. And possession of a note,

not indorsed, by one, other than the payee, affords *prima facie* evidence that he is the equitable owner. But possession by one, shown on the face of the note to be but a joint payee, could be regarded only as *prima facie* evidence of the title there disclosed. Illustrations of this may be found in the rule applicable to the possession of property by co-tenants. Freeman on Co-tenancy, § 167; *Brown* v. *Graham*, 24 Ill. 628.

The further point is made by the counsel for appellants that, conceding that Charles Feickert could not, by his indorsement of the notes, transfer the title of appellee, yet appellants' title to the notes and their right to collect and appropriate the money due thereon, exists just as effectually by the delivery of the notes for a valuable consideration paid as if the notes had been assigned to them.

The principle upon which it is held that the indorsement of one partner binds all the members of the firm is that of agency—that each partner, within the scope of the partnership business, is the agent of all the others—but this has no application to mere joint payees, and hence one can not bind the other by his indorsement. Story on Agency, § 39. Neither party being the agent, in legal contemplation, of the other, he can no more bind the other by a sale of the note, without indorsement, than he can by a sale of the note with an indorsement. He has no power whatever to dispose of the interest of his co-payee, either legal or equitable, in the note, without the consent of his co-payee.

Nor do we conceive the fact that Charles Feickert was authorized to collect the notes when due as of any controling significance. This only authorized him to collect when due, not to sell or compound the notes. *Thompson* v. *Elliott*, 73 Ill. 221; *Padfield* v. *Green*, 85 id. 529.

We see no cause to disturb the judgment of the Appellate Court, and it is affirmed.

*Judgment affirmed.*